CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 14 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AMANDA K. PRICE,<br>Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:04cv741<br>) |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | )<br>) By: Hon. Michael F. Urbanski<br>) United States Magistrate Judge<br>) |

## MEMORANDUM OPINION

Plaintiff Amanda K. Price ("Price") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on cross-motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision.

Plaintiff claims disability based on anxiety, muscular dystrophy, neck and back pains, migraines and depression. (Administrative Record, hereinafter "R.," at 70) Plaintiff disputes the administrative law judge's ("ALJ") finding that the plaintiff has the residual functional capacity ("RFC") for a narrowed range of sedentary and light work. (R. 26) Plaintiff claims the ALJ failed to properly consider her mental and physical impairments, and that muscular dystrophy renders plaintiff disabled from all substantial gainful employment. (Pl.'s Mem. In Support of Mot. Summ. J. 6-7) Plaintiff also claims that the ALJ erred in concluding plaintiff's drug and

alcohol use were contributing factors material to the determination of whether or not plaintiff is disabled. (Pl.'s Mem. In Support of Mot. Summ. J. 6) However, substantial evidence supports the ALJ's decision that plaintiff's subjective complaints lack credibility. No doctor has opined that plaintiff is disabled and her physical complaints are contradicted by evidence of a wide variety of physical behavior in the record. Substantial evidence also supports the ALJ's conclusion that plaintiff is not disabled from all forms of employment by her claimed non-exertional impairments. Additionally, the ALJ concluded the plaintiff is not disabled under the Act; therefore, any finding as to the materiality of plaintiff's alcohol and drug use does not render the Commissioner's decision erroneous. As the Commissioner's decision is supported by substantial evidence, the Commissioner's motion for summary judgment will be granted accordingly.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

Plaintiff was born on February 20, 1980 and has an eleventh grade education. (R. 17) Plaintiff's previous work includes that of a cashier, packager, manager, and dry cleaning attendant. (R. 17, 71, 555-58) Plaintiff filed an application for DIB and SSI on May 5, 2003, alleging she became disabled on November 22, 2002 due to muscular dystrophy, anxiety, neck and back pain, migraines and depression. (R. 70) Plaintiff's claims were denied at both the initial and reconsideration levels of administrative review. (R. 32-36, 41-43) Plaintiff testified at an administrative hearing before an ALJ on May 13, 2004. (R. 550-74) Following the hearing, the ALJ denied plaintiff's claims for DIB and SSI, finding plaintiff has the RFC for a narrowed range of sedentary and light work. (R. 26) The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) when the Appeals Council denied plaintiff's request for review. (R. 7-10) Plaintiff then filed this action challenging the Commissioner's decision.

Plaintiff last worked on July 9, 2002 as a cashier at Choice Cigarettes. (R. 70, 555) In addition to stating she quit her job as a cashier because she was not working enough hours, (R. 138), plaintiff also stated she had been having problems with her legs while working there. (R. 556, 558) She was diagnosed with limb girdle dystrophy, a form of muscular dystrophy which runs in her family, in October of 2002. (R. 285-86)

Mark A. Scialabba, M.D., of the Roanoke Neurological Center, treated plaintiff for leg pain, sleeplessness, and depression. (R. 286) Plaintiff complained of progressive weakness in her legs and hands, but denied any significant falls. (R. 285) In a follow up visit on December 18, 2002, Dr. Scialabba prescribed a daily exercise regimen. (R. 284) Plaintiff complained of increased leg pain she described as "throbbing, aching," as well as increased weakness. (R. 284)

3

A neurological exam did show some degree of weakness, with 4/5 lower extremities, 4+/5 upper extremities, 5-/5 biceps and triceps, and 5/5 distal wrist extensors and hand intrinsic muscles. (R. 284) Dr. Scialabba observed plaintiff's ability to ambulate cautiously and slowly. (R. 284) On March 26, 2003, her neurological exam showed signs of improved strength, with quadriceps and dorsiflexors at 5-/5 and upper extremities at 5-/5. (R. 283) Dr. Scialabba saw plaintiff again on September 24, 2003 and remarked that she was "doing quite well" and had no significant sensory loss. (R. 282, 505) She was ambulating frequently with mild soreness and no significant leg pain. (R. 282, 505)

Plaintiff was treated for injuries sustained in a motor vehicle accident on August 9, 2003, when she swerved to avoid a deer and hit a tree. (R. 495, 498) Despite the accident, examination and x-rays were unremarkable after the accident. (R. 495, 498) She had no major complaints of pain in either knee, but she reported some discomfort in her left wrist and hand. (R. 495) Dr. Hatch recommended that Price stop using crutches and refused her request for additional analgesics, finding instead that she could manage very well with over-the-counter pain medications and exercise. (R. 496)

Plaintiff's medical records show a wide range of physical medical complaints. She has complained of an ankle injury, (R. 425), abdominal pain, (R. 112, 288, 305, 314, 401-02, 436, 442), swollen eyelid due to an infected eyebrow ring, (R. 164-65), hyperventilation, (R. 185, 201, 295), headaches, (R. 176-77), and flu (R. 455). The plaintiff has also been treated for various ailments arising out of other vigorous or extreme activities. For example, plaintiff has been treated for a left hip injury sustained while hit in a fight with a baseball bat, (R. 423), wrist pain suffered while wrestling with friends, (R. 242), a knee and hand injury she received while driving

4

a race car and running into a wall, (R. 246), a neck injury sustained while playing around with friends and being dropped on her head, (R. 460), and a right hand injury she suffered after punching a wall. (R. 467, 472)

Plaintiff testified at her administrative hearing that she can only sit for approximately fifteen to thirty minutes at a time, stand for approximately fifteen minutes at a time, and that she must lie down ten times per day. (R. 562-63) She stated that she has constant pain in her legs and her ankles, and that her legs often give out on her. (R. 558) She also testified that she has constant back pain and frequent migraine headaches which last anywhere from one to three days. (R. 559) Price says that weakness in her arms causes her to drop things. (R. 559-60)

Plaintiff claims to have been "depressed most of her life," (R. 132), and says she suffers from a number of emotional and mental impairments. She has undoubtedly had a difficult childhood. Plaintiff states she was sexually abused at age five by a cousin, and then raped at age seventeen by another cousin. (R. 138, 351) Her parents divorced when she was eight years old, and she has had strained relations with her mother. (R. 138, 352, 353)

On February 15, 2003 plaintiff was admitted to the intensive care unit at Montgomery Regional Hospital after overdosing on multiple medications, including amitriptyline, Lortab, Antivert and aspirin. (R. 118, 120) Plaintiff stated that the overdose was intentional and that it was a suicide attempt. (R. 118) She was later seen at the Center for Behavioral Health, where she said that she recently broke off an eight year relationship with her boyfriend and was feeling overwhelmed by all of her problems when she overdosed. (R. 132) Her past psychiatric history reveals that she has seen a number of therapists over the years, and at age fourteen plaintiff was diagnosed with "middle child syndrome." (R . 132) Dr. Hartman noted that plaintiff is very

5

young in her personality, (R. 133), and seems "in some ways child blocked." (R. 134) He observed a lack of psychotic thinking and remarked that though she seemed depressed, she had no active suicidal thoughts at the time. (R. 134)

Plaintiff was transferred to the Southwestern Virginia Mental Health Institute on February 18, 2003 and was admitted involuntarily. (R 137) Plaintiff then stated that when she overdosed, she was merely angry with her mother and "just wanted to show her mother how much her mother had affected her." (R. 138) Plaintiff insisted that she was not depressed and that the whole incident had been blown out of proportion. (R. 138) She claimed not to be particularly distressed over her break-up with her boyfriend of eight years. (R. 138) She denied suicidal and depressive thoughts, as well as panic attacks and phobias. (R. 143) As a result, her mental status examination was benign. (R. 138, 143) Upon discharge, the plaintiff was given a Global Assessment of Functioning (GAF) of seventy. (R. 139) She was diagnosed with adjustment disorder with depressed mood, and borderline personality disorder. (R. 139) She was quite functional upon discharge, not suicidal or depressed, and it was noted that her prognosis was good. (R. 140)

Subsequent to her discharge from the Southwestern Virginia Mental Health Institute, plaintiff sought treatment at New River Valley Community Services. (R. 209-35) She was diagnosed with major depressive disorder and borderline personality disorder. (R. 219) Plaintiff was instructed on ways to deal with panic attacks. (R. 225) Heidi Clay, M.D., prescribed Zoloft and then on May 8, 2003 had plaintiff sign a statement where she agreed not to take medication that had not been prescribed for her. (R. 213, 220) Plaintiff did not show up for a number of

6

scheduled appointments at New River Valley Community Services from April 2003 to December 2003. (R. 209, 210, 214, 222, 223, 224, 277, 321, 325, 503)

After apparently threatening suicide to her ex-boyfriend, plaintiff was then admitted to Carilion Saint Albans Hospital on a temporary detention order. (R. 351) She repeatedly denied suicidal thoughts and stated "everybody gets depressed." (R. 351, 365, 368) Though she admitted to abusing opiates off the street, she only had mild detoxification/withdrawal syndrome and her drug screen was negative for opiates. (R. 352, 365) Plaintiff stated that she felt better after taking Zoloft, but that she had stopped taking the drug six months earlier after failing to get along with her physician and thus not getting the drug refilled. (R. 351) Price was diagnosed with severe depressive disorder, panic disorder with agoraphobia, anxiety disorder, and opiate abuse and withdrawal. (R. 355)

## ANALYSIS

The issue in this case is whether there is substantial evidence to support the Commissioner's decision that the claimant is not disabled. Under the Act, a claimant for disability benefits has the burden of proving that she cannot work. See 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(I); see also Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972) (noting that a claimant has the burden of proving disability).

Having reviewed the record and applicable case law, this court reaches the conclusion that plaintiff has not met her burden of proving that she is disabled. There is substantial evidence to support the ALJ's finding that the plaintiff retains the residual functional capacity to perform a narrowed range of sedentary or light work. (R. 26)

7

### A. Plaintiff's claims of physical limitation are inconsistent with the record, and substantial evidence supports the ALJ's finding that plaintiff's complaints are not credible.

Plaintiff argues that muscular dystrophy renders her disabled from all substantial gainful employment. (Pl.'s Mem. In Support of Mot. Summ. J. 7) Plaintiff bases this claim on her own subjective complaints but provides no objective evidence in support thereof. It is clear under the law that "[p]ain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or lack thereof." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); 20 C.F.R. § 404.1529. Plaintiff's statements to physicians by way of history or complaint do not constitute objective medical evidence, and the recording of a claimant's complaints by a physician does not transform those complaints into objective clinical evidence. Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1984). An individual does not have to be pain-free in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990). Plaintiff must demonstrate through medical evidence, including objective observations, support for the notion that pain is disabling. Plaintiff has failed to meet her burden.

While plaintiff does suffer from the limb girdle form of muscular dystrophy, Dr. Scialabba remarked that plaintiff was "doing quite well" and ambulating frequently with no significant pain, when he last saw her on September 24, 2003. (R. 282, 505) Neurological examinations show minimal weakness of 4/5 in the lower extremities, 4+/5 in the upper extremities, 5-/5 in the biceps and triceps, and 5/5 in the distal wrist extensors and hand intrinsic muscles. (R. 284) Three months later, while plaintiff complained of fatigue after holding objects for longer than five minutes, her neurological exam showed increased strength in the quadriceps and dorsiflexors to 5-/5, and an increase in the upper extremities to 5-/5. (R. 283)

8

No treating physician has opined that the plaintiff is disabled. Likewise, no doctor has prescribed any sort of walking device, despite plaintiff's claims of frequent falls. (R. 558) Furthermore, Andrew Dow, M.D., at Carilion St. Albans Hospital noted plaintiff "does not have a notably abnormal gait." (R. 354) Dr. Dow does notice a suggestion of muscular wasting bilaterally, but states it is not absolute. (R. 354) No doctor limits plaintiff's walking, sitting or standing, or indicates that she must lie down during the day. In fact, Dr. Scialabba prescribed a daily exercise regimen. (R. 282, 284) Substantial evidence exists to support the ALJ's conclusion that "objective signs and clinical findings indicate a higher level of functioning than alleged by claimant at hearing." (R. 22)

Plaintiff's own behavior weighs against her claims of physical limitation. Plaintiff testified that she can only sit for fifteen to thirty minutes at a time, stand for approximately fifteen minutes at a time, and must lie down ten times per day. (R. 562-63) However, her medical records indicate she has been seen in emergency rooms for injuries resulting from lifting a couch, (R. 420), fighting with a baseball bat, (R. 423), wrestling with friends, (R. 240, 432, 460), crashing race cars into walls, (R. 246), and punching a wall, (R. 467). Plaintiff claims the ALJ erred in concluding such reckless activities undermine plaintiff's credibility, and plaintiff links this behavior to her ongoing depression and emotional problems. (Pl.'s Mem. In Support of Mot. Summ. J. 5-6) Regardless of whether this activity is related to plaintiff's emotional immaturity, Price certainly could not engage in these sort of activities if she possessed the limited physical functional capacity she claims.

Plaintiff also lists her activities as racing, reading and writing. (R. 91) She is able to do household chores, including sweeping, mopping, laundry, and grocery shopping. (R. 90) All of

9

this evidence supports the ALJ's finding that the plaintiff is not totally credible as to her physical limitations.

### B. The ALJ properly considered evidence of plaintiff's mental impairments and did not err in finding that her impairments are not disabling.

Plaintiff argues that the ALJ failed to properly consider the functional limitations imposed by plaintiff's mental impairments. (Pl.'s Mem. In Support of Mot. Summ. J. 8) Indeed, "a psychological disorder is not necessarily disabling. There must be a showing of related functional loss." Gross, 785 F.2d at 1166 (quoting Sitar v. Schweicker, 671 F.2d 19, 20-21 (1st Cir. 1982)). The mere diagnosis of a condition is not conclusive; any impairment must be accompanied by functional limitations that render the claimant unable to work. Hays, 907 F.2d at 1458; see Gross, 785 F.2d at 1165; Wagner v. Apfel, 1999 U.S. App. LEXIS 29887, at *11 (4th Cir. Nov. 16, 1999). Plaintiff has failed to prove the existence of any such functional limitations in this case.

Plaintiff claims to have suffered from depression for the majority of her life. (R. 132) Plaintiff has been treated for suicidal tendencies, but she has repeatedly insisted that she is not depressed and that she was not suicidal. (R. 132, 134, 137, 138, 351, 365, 368 ) She stated at Southwestern Virginia Mental Health Institute that she was merely angry at her mother and wanted to show her mother how much she affected Price. (R. 138) When treated at Carilion Saint Albans for an alleged suicide threat, plaintiff admitted she had been drinking when making the threat and denied being suicidal. (R. 351-52) Though plaintiff has been diagnosed with depressive disorder and borderline personality disorder, (R. 139, 219, 355), no doctor has opined that her mental impairments are disabling.

10

Dr. Hartman noted plaintiff's lack of psychotic thinking and stated that though depressed, plaintiff had no active suicidal thoughts. (R. 134)  Upon discharge from the Southwest Virginia Mental Health Institute, she was observed to be quite functional, not suicidal or depressed, and her prognosis was good.  (R. 140)  Plaintiff has been seen a number of times in the emergency room for panic attacks, (R. 181, 193, 212, 295), but also has denied having panic attacks. (R. 138, 143)

The ALJ correctly notes plaintiff's non-compliance with treatment.  (R. 22, 23)  Price repeatedly failed to show up for her appointments and treatments at New River Valley Community Services.  (R. 209, 210, 214, 222, 223, 224, 277, 321, 325, 503)  Plaintiff also stated she felt better when taking Zoloft, but quit taking the medication after she failed to get along with her physician.  (R. 351)  Additionally, plaintiff left the emergency room once after complaining of abdominal pain and blood in her stool because she wanted to go to a car race.  (R. 306-07)  Claimants must follow prescribed treatments in order to get social security benefits.  20 C.F.R. § 404.1530(b).

Though plaintiff complains of an inability to interact well with others, evidence exists to the contrary.  Plaintiff visited the emergency room twice for injuries sustained after horsing around with friends.  (R. 240, 460)  Treatment notes from Saint Albans indicate that plaintiff was socializing with peers.  (R. 368)  Additionally, plaintiff lists family and friends as supportive in obtaining her treatment goals.  (R. 233)  Upon discharge from the Southwestern Virginia Mental Health Institute, her global assessment of functioning (GAF) was seventy, (R. 139), indicating plaintiff had "some mild symptoms or some difficulty in social, occupational, or school functioning but is generally functioning pretty well and has some meaningful interpersonal

11

relationships." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). Still, the ALJ gave Price the benefit of the doubt and considered plaintiff's difficulty interacting with coworkers in his hypothetical to the vocational expert. (R. 569) Based on this hypothetical, the vocational expert found jobs, including laundry worker and vehicle cleaner, that exist in significant numbers in the national economy. (R. 569)

State agency physicians found plaintiff's mental impairments limited her only *moderately* in certain areas. (R. 273-74) The ALJ is entitled to give less weight to an opinion or any portion of the evidence that is not supported by or is consistent with other evidence in the record. Wagner, 1999 U.S. App. LEXIS 29887, at *8-9; see 20 C.F.R. §§ 404.1527(d)(3), (4), 416.927(d)(3), (4). In this case, the ALJ did not find plaintiff's mental impairments disabling.

The ALJ adequately considered all of the evidence in this case, including plaintiff's testimony. (R. 25) While plaintiff disagrees with the credibility determination made by the ALJ, that decision is reserved to the Commissioner and so long as it is supported by substantial evidence, does not warrant reversal. As a general rule, resolutions of conflicts in the evidence are a matter within the province of the Commissioner, and not the courts. Richardson, 402 U.S. at 401; Oppenheim v. Finch, 495 F.2d 396, 396 (4th Cir. 1974).

After a review of the record in this case, the court concludes that the Commissioner's final decision is supported by substantial evidence. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (stating that an ALJ's credibility determination is entitled to great weight when supported by the record); Kearse v. Masjanari, 73 Fed. Appx. 601 (4th Cir. 2003). The plaintiff has not met her burden of demonstrating a functional limitation preventing her from engaging in substantial gainful activity.

C.  **The ALJ's conclusion that plaintiff's alcohol and drug use is a material contributing factor to her disability is irrelevant and does not constitute reversible error.**

Finally, plaintiff argues the ALJ erred in concluding that alcohol and drug use is a contributing factor material to the determination of whether or not plaintiff is disabled. (Pl.'s Mem. In Support of Mot. Summ. J. 6) Under 42 U.S.C. § 423(d)(2)(c), an individual "shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." If alcoholism or drug addiction is at issue, the ALJ must undergo a two-step analysis. First, the ALJ must determine whether the claimant is disabled. 20 C.F.R. § 404.1535. If the ALJ determines that the claimant is in fact disabled, he must then decide whether alcoholism or drug addiction is a contributing factor material to the determination of claimant's disability. Id.

In this case, the ALJ considered plaintiff's polysubstance abuse, finding claimant's depression intertwined with episodic alcohol and drug abuse. (R. 22) Plaintiff argues that the ALJ did not properly evaluate plaintiff's episodic drug/alcohol abuse as no doctor indicated that her substance abuse was material. As a result, plaintiff argues that this case be remanded for a consultative examination on the issue of the impact of her substance abuse. The Commissioner agrees that the ALJ's conclusion as to substance abuse is not fully supported in the record, but argues that as the issue of substance abuse was not central to the ALJ's decision, any such error is harmless.

This case does not require a remand to more fully develop the record as regards plaintiff's substance abuse. It is clear from the ALJ's opinion that the ALJ concluded that plaintiff did not meet her burden of proving that she was disabled. While the ALJ states that

13

plaintiff's substance abuse would be material to any finding of disability, no such finding was made in this case. In light of the ALJ's determination that plaintiff is not disabled, Price's history of polysubstance abuse is not directly relevant to the outcome of her case. 20 C.F.R. § 404.1535(a) (requiring a finding of disability prior to consideration of whether substance abuse is a contributing factor material to the determination of claimant's disability); see also Washington v. Barnhart, 66 Fed. Appx. 290, 2003 U.S. App. LEXIS 1740, at *6 (3d Cir. Jan. 30, 2003). Therefore, plaintiff received the benefit of evidence to which she was not entitled, namely evidence of drug and alcohol abuse, yet the ALJ still concluded that she was not disabled. See Wagner, 1999 U.S. App. LEXIS 29887, at *4, n.2. The ALJ's consideration of Price's polysubstance abuse does not amount to reversible error in this case. See Washington, 66 Fed. Appx. 290, 2003 U.S. App. LEXIS 1740, at *6.

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ, as there is substantial evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act. See Pierce v. Underwood, 487 U.S. 552, 565 (1988); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). As such, it is recommended that defendant's motion for summary judgment be granted.

## CONCLUSION

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for

14

benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER:** This 13th day of December, 2005.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge